UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JOSE LORA,

Plaintiff, 9:26-CV-0369 (AMN/DJS)

v.

SERGEANT JOHN DOE 1, et al.,

Defendants.

---

APPEARANCES:

JOSE LORA
Plaintiff, pro se
97-A-0846
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

ANNE M. NARDACCI
United States District Judge

**DECISION AND ORDER**

## I. INTRODUCTION

The Clerk has sent to the Court for review a sealed complaint submitted by pro se plaintiff Jose Lora ("plaintiff") asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983") together with an application to proceed in forma pauperis ("IFP") and a motion to seal the case. Dkt. No. 1 ("Compl."); Dkt. No. 4 ("Motion to Seal")[1]; and Dkt. No. 9 ("IFP Application").

## II. MOTION TO SEAL

It is well-settled that there exists a common-law right of access to judicial records. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) ("The common law

---

[1] In light of the Motion to Seal, this action was sealed from public viewing by the Clerk's Office.

right of public access to judicial documents is firmly rooted in our nation's history."); *United States v. Erie County*, 763 F.3d 235, 238-39 (2d Cir. 2014) ("The notion that the public should have access to the proceedings and documents of courts is integral to our system of government."); *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997); *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*") ("The common law right of public access to judicial documents is said to predate the Constitution."). It is also "well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). The burden of demonstrating that case records should be sealed rests on the party seeking such action. *See, e.g., DiRussa,* 121 F.3d at 826. Additionally, the Supreme Court has explained that "the decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599 (1978) (citations omitted).

With respect to the common law right of access to judicial documents, the Second Circuit has articulated a three-step process for determining whether such documents should be sealed. First, a court must determine whether "the documents at issue are 'judicial documents'" to which the presumption of access attaches. *Lugosch*, 435 F.3d at 119 (quotation omitted). If so, the court must next determine the weight of the presumption of access. *Id*. "'[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Id*. (quoting *United States v.*

*Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*")); *see also Amodeo II*, 71 F.3d at 1048 (explaining the importance of "professional and public monitoring" of the judiciary to its "democratic control" and concluding that "[s]uch monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions"). Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it." *Lugosch,* 435 F.3d at 120 (quotations and citation omitted). "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and the privacy interests of those resisting disclosure." *Id*. (quotations and citation omitted).

In addition, in situations in which there exists a qualified First Amendment right of access to the judicial documents at issue, a court may only seal the documents "'if specific, on the record findings are made demonstrating the closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Lugosch*, 435 F.3d at 120 (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). "'Broad and general findings by the trial court . . . are not sufficient to justify closure.'" *Id*. (quoting *In re N.Y. Times Co*., 828 F.2d at 116). "Examples of 'higher values' may include law enforcement interests, the privacy of innocent third parties, . . . and the attorney-client privilege[.]" *Mann v. New York State Ct. of Appeals*, No. 1:21-CV-49 (MAD/CFH), 2021 WL 1224011, at *3-4 (N.D.N.Y. Mar. 31, 2021) (internal quotation marks and citations omitted).

Here, plaintiff requests that the Court seal the docket (and apparently all future filings), i.e., judicial documents, "to keep plaintiff safe, secure, and well under the control of the facility in New York State." *See* Motion to Seal at 1. Plaintiff specifically asks that "his name [and] DIN" be kept under seal and not displayed on the public docket. *Id*. While the Court is

sensitive to plaintiff's concerns, he is no longer incarcerated in the facilities where the alleged incidents occurred. Moreover, the Motion to Seal does not identify any specific facts about this case that are private or sensitive in nature. Nor does the Motion to Seal identify any specific threat that plaintiff has experienced as a result of this action.

In light of the foregoing, the Court finds that plaintiff has not met his burden of demonstrating that "the most compelling reasons" exist and dictate that the entire record in this action should be sealed from public view. *See Lugosch*, 435 F.3d at 123 (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)); *Doe v. Greiner*, 662 F.Supp.2d 355, 361 (S.D.N.Y. 2009) (holding that plaintiff's "unsupported and uncorroborated naked assertion that he has worked as an informant and is now in danger is insufficient to set aside the public's interest in open court proceedings"). Accordingly, plaintiff's request to seal the docket and all future filings is denied and the Court shall unseal the docket.

## III. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b) *and Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[2] Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uscourts.gov. It does not appear from that review that plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Dkt. No. 3. Plaintiff's IFP Application (Dkt. No. 9) is granted.

## IV. DISCUSSION

### A. Governing Legal Standard

Having found that plaintiff meets the financial criteria for commencing this action IFP, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose

of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 Fed. App'x 102, 104 (2d Cir. 2009).

The Court will construe the allegations in the complaint with the utmost leniency. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**B. Summary of the Complaint**

The complaint contains allegations of wrongdoing while plaintiff was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Sing Sing Correctional Facility ("Sing Sing C.F.") and Coxsackie Correctional Facility ("Coxsackie C.F."). *See generally* Compl. The following facts are set forth as alleged by plaintiff in his complaint.

In September 2024, plaintiff was confined at Sing Sing C.F. Compl. at 9. From September 2024 until October 2024, plaintiff wrote to his family, friends, and lawyer and asked that they inform defendant Superintendent J. One ("Supt. One") that plaintiff was being "pursued" by gang members. *Id*. Plaintiff was transferred from B-Block to A-Block to await an interview by an official designated by Supt. One. *Id.* However, the interview did not occur. *Id*. From November 1, 2024 through November 14, 2024, defendant Correction Officer John Doe 7 ("C.O. Doe #7") slandered plaintiff and referred to him as a "snitch." Compl. at 10-11. On November 14, 2024, defendant Correction Officer John Doe 8 ("C.O. Doe #8") "whispered" to the other inmates that plaintiff was a "snitch." *Id*. at 11.

On November 18, 2024, while confined in the Rehabilitation Release Unit ("RRU") at Coxsackie C.F., plaintiff handed defendant Correctional Officer Burnsey ("Burnsey") a letter, in a sealed envelope, addressed to the Deputy Superintendent of Security. Compl. at 11. An inmate intercepted the letter and dropped it in a cell. *Id*. at 11-12. Two inmates, both members of the "blood gang," made copies of the letter and circulated it throughout the general population and "other maximum security facilities." *Id*. at 12.

While in Coxsackie C.F., plaintiff was repeatedly harassed and "assaulted" by Burnsey and other inmates with "switcher light beam pens" that "came through the cell walls" and "messed with [his] human nervous system." Compl. at 12. Extension cords were re-wired

into antennas to send electrical shock waves through the walls causing plaintiff to become restless. *Id.* Additionally, "black headphone technology" was utilized to eavesdrop on plaintiff. *Id*. at 12-13.

On November 22, 2024, defendant Sergeant A. Peraltas ("Peraltas") arrived at plaintiff's cell to escort plaintiff to "the flats." Compl. at 13. Before they departed, plaintiff asked Peraltas for assistance in forwarding a letter to the Deputy Superintendent of Security related to plaintiff's concern for his safety at the facility. *Id.* Plaintiff also asked Peraltas to place him in protective custody. *Id*. Plaintiff tried to explain the tactics that inmates were using to harass him, but Peraltas told plaintiff to "keep it shut." *Id.* at 14. To date, plaintiff has not received a response from the Deputy Superintendent. Compl. at 14. Instead, plaintiff "heard" that other inmates had copies of his letter. *Id.*

In December 2024, plaintiff handed a note to defendant Sergeant Jane Doe/Magnellia ("Magnellia") while she made rounds. Compl. at 17. In the note, plaintiff asked for protective custody and Magnellia responded that she would "get back to plaintiff in a few minutes." *Id.* However, Magnellia never returned. *Id*. On another day in December, plaintiff showed Magnellia the same note, but she continued to ignore him. *Id*. As a result, plaintiff was "assaulted" by gang members with chemicals including "embalmed fluids toxins" and fumes that permeated plaintiff's cell (F-Block, 1-Company-6 Cell) through the ceiling. Compl. at 17.

On January 9, 2025, a "thick invisible layer of paste-like substance of embalm fluid/toxin fumes" permeated plaintiff's cell. Compl. at 19. The fluid, which entered the cell through the ceiling, landed on plaintiff's head and stuck like glue "forcing its way through plaintiff's brain and mouth" and other organs. *Id.* The fluid reach his "soles" preventing him from moving. *Id.* At 9:30 p.m., Magnellia appeared at plaintiff's cell and plaintiff told her that

he was experiencing chest pains. Compl. at 22. Defendant Correction Officer Thompson ("Thompson"), defendant Correction Officer John Doe #2 ("C.O. Doe 2"), and Magnellia escorted plaintiff to the infirmary. *Id*. During the walk, Magnellia told Thompson that plaintiff was a "dead man walking" and that he could not live in the general population because there was a "hit out" on plaintiff. *Id.* During the walk, "fluid" was "dripping" out of plaintiff's hands, feet, and anus. *Id*. at 23. While plaintiff was in the infirmary, headphones were attached to his ears and connected to defendant Correctional Officer Parra-Aviles ("Parra-Aviles"). Compl. at 23. With the headphones, Parra-Aviles sent messages to plaintiff directing him to tell the nurse that plaintiff had swallowed plastic balls and to state he was a "Trump supporter." *Id.* at 23-24.

Parra-Aviles and defendant Correctional Officer John Doe #2 ("C.O. John Doe 2") transported plaintiff to Albany Medical Center. Compl. at 25. Defendant Sergeant John Doe ("Sgt. John Doe") arrived at the hospital, via a separate vehicle, and "interacted" with C.O. Doe #2. *Id*. While plaintiff sat in the waiting room, Parra-Aviles continued to relay messages and "taunted" plaintiff via the headphone technology. *Id.*at 25-26. While plaintiff waited to be admitted, C.O. Doe 2, Parra-Aviles, and Sgt. John Doe were conversing. *Id.* at 27. Plaintiff was admitted to the hospital for two days and continued to be "assaulted" with "switcher light beam pens" and the headphone technology. *Id.*

On May 21, 2025, plaintiff was called to the Sergeant's Office for an interview with defendant Sergeant Jane Doe #4 ("Sgt. Jane Doe 4"). Compl. at 28. Plaintiff told Sgt. Jane Doe 4 that "rat hunters" wanted to stab him and that employees at the facility were related to men that plaintiff helped convict in New York City. *Id*. at 29. Plaintiff requested protective custody. *Id*. Sgt. Jane Doe 4 directed plaintiff to return to his cell. *Id*.

On June 17, 2025, at approximately 7:10 a.m. and 8:30 a.m., plaintiff was in the Sergeant's Office being interviewed by defendants Sergeant John Doe/Jackson ("Jackson") and Correctional Officer Bainmann ("Bainmann"). Compl. at 30. Plaintiff told defendants that he needed protective custody because "rat hunters" and staff members wanted to stab him. *Id*. Plaintiff gave Bainmann a note with the names of the "rat hunters." *Id.* Between 1:00 p.m. and 3:00 p.m., plaintiff overheard another inmate telling all of the inmates that an officer "dropped a note inside his cell with a list of names." *Id.*

On June 24, 2025, plaintiff was interviewed by defendant Sergeant Jane Doe #5 ("Sgt. Jane Doe 5"). Compl. at 32. Plaintiff told defendant that he needed to be placed in protective custody and provided plaintiff with the same names he previously provided other defendants. *Id*. Plaintiff said he feared for his life, but defendant told him to return to his cell. *Id*.

On August 14, 2025, plaintiff was in the Sergeant's Office with Sgt. Jane Doe 5. Compl. at 29. Defendant asked plaintiff for more information and plaintiff could not recall the information because he was "dosed with embalmed fluid toxins." *Id*. at 29-30.

On September 2, 2025, plaintiff was told that defendant Captain John Doe #3 ("Capt. Doe 3") denied his request for protective custody. Compl. at 32.

On September 24, 2025, plaintiff's property was packed and he was informed that he was being moved. Compl. at 35. At approximately 1:30 p.m., Correctional Officer Ortiz ("Ortiz") escorted plaintiff to the front office of E-Block. *Id*. at 36. Plaintiff was handcuffed "aggressively." *Id.* During the escort, Ortiz harassed plaintiff. *Id.* at 37.

On September 25, 2025, at approximately 1:53 a.m., plaintiff was in his cell on D-Block when Peraltas was making rounds and told another officer that plaintiff was "going to get stabbed tomorrow." Compl. at 14. Peraltas has a "close relationship" to a man "plaintiff got

convicted" and Peraltas is the "son of a man plaintiff went to the same school with" and "grew up seeing." *Id*.

Construed liberally[3], the complaint contains Eighth Amendment claims and retaliation claims. *See generally* Compl. Plaintiff seeks monetary damages and injunctive relief. *See id.* at 38. For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the complaint.

**C. Sever and Transfer Claims Related to Sing Sing C.F.**

Rule 21 of the Federal Rules of Civil Procedure permits the Court to sever any claim against a party and proceed with that claim separately. Fed. R. Civ. P. 21. In deciding whether to sever a claim, a court should consider the following:

> whether the claims arise out of the same transaction or occurrence; whether the claims present some common questions of law or fact; whether settlement of the claims or judicial economy would be facilitated; whether prejudice would be avoided if severance were granted; and whether different witnesses and documentary proof are required for the separate claims.

*Morris v. Northrop Grumman Corp*., 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999).

"A claim may be severed based upon lack of a significant relationship between defendants or solely for the purpose of facilitating transfer. Where the administration of justice would be materially advanced by severance and transfer, a court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the

---

[3] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. S*ee, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

action against other defendants." *Cain v. New York State Bd. of Election*s, 630 F.Supp. 221, 225-26 (E.D.N.Y. 1986). "A decision to sever lies within the discretion of the Court." *Id.* at 225.

Here, plaintiff's claims related to alleged wrongdoing that occurred at Sing Sing C.F. are more appropriately heard in the Southern District of New York ("Southern District"). Those claims are separate and distinct from the claims arising out of alleged wrongdoing that arose while plaintiff was confined at Coxsackie C.F. and will require different witnesses and documentary proof. The remainder of the factors also weigh in favor of severance.

Thus, pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a), the claims that arose at Sing Sing C.F. in the Southern District are severed from this action, and transferred to the Southern District. Defendants John Doe 7, John Doe 8, and J. One and all claims against them are severed and transferred to the Southern District.

This Court will retain jurisdiction over the claims that allegedly arose while plaintiff was incarcerated or confined at Coxsackie C.F. and will therefore review the sufficiency of those claims. The Court takes no position on the sufficiency of the claims that have been severed and will be transferred to the Southern District.

**D. Analysis**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F.Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes*

*v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic.").

In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show “a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). This is true even for supervisory officials. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("There is no special rule for supervisor liability."). "[A] plaintiff must plead and prove 'that each Government-official defendant, [including supervisors,] through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Iqbal,* 556 U.S. at 676).

**1. Rule 10**

The complaint contains factual allegations related to individuals who are not identified in the caption, or list of parties, as defendants. *See* Compl. at 11-14, 22, 32-35. Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). A party not named in the caption of the complaint is not a party to the action. *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (holding that the failure to name the individual defendants against whom the plaintiff intends to assert claims makes it "infeasible for the Court to determine which of the individual

officers mentioned in the body of the complaint should be deemed to be defendants to which claims").

Accordingly, plaintiff's allegations against any individual who is not named or identified in the complaint or caption, as John Doe or otherwise, are dismissed for failure to state a claim. *See Whitley v. Krinser,* No. 06-CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007); *Robles v. Armstrong*, No. 3:03-CV-1634, 2006 WL 752857, at *1 n.1 (D. Conn. Mar. 17, 2006) ("Because the John and Jane Does are not listed in the caption of the Complaint, they are not defendants and the court does not consider claims against them.").

**2. Frivolous Claims**

A district court may dismiss the complaint sua sponte if it determines that it lacks subject matter jurisdiction or that the complaint is frivolous. *See Fitzgerald v. First E. Seventh Street Tenants Corp*., 221 F.3d 362, 363-64 (2d Cir. 2000) (per curiam); *see Tyler v. Carter*, 151 F.R.D. 537 (S.D.N.Y. 1993), *aff'd*, 41 F.3d 1500 (2d Cir. 1994). "An action is frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co*., 141 F.3d 434, 437 (2d Cir.1998) (internal quotations omitted) (citing *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir.1990) (per curiam) (quotation omitted)). "A complaint is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint. *Id*. (internal quotation marks omitted).

The majority of the allegations set forth in the complaint are factually frivolous. Plaintiff claims he was electronically monitored and that his thoughts and actions were controlled "with light beam pens," "extension cord antennas," and "black headphone technology."

Plaintiff also claims he was infected with "embalming" toxins, fumes, and fluids that "possessed" his body. The Court finds these allegations so outrageous and unbelievable as to be factually frivolous. *See Dorsey v. Fisher*, No. 9:09-CV-1011 (GLS/DEP), 2009 WL 4985421, at *4 (N.D.N.Y. Dec. 15, 2009) (dismissing allegations that the plaintiff's food was poisoned with infected D.N.A. as wholly conclusory, not plausible, and incredible); *see also Ball v. Crim. Investigations Dep't,* No. 5:24-CV-0438 (GTS/TWD), 2024 WL 2020256, at *4 (N.D.N.Y. May 6, 2024) (collecting cases) (noting that allegations of mind control are "fanciful" and "border on the delusional"), *report and recommendation adopted,* 2024 WL 2836050 (N.D.N.Y. June 4, 2024), *appeal dismissed* (Aug. 14, 2024).

**3. Eighth Amendment Claims**

Construing the complaint liberally, plaintiff alleges that defendants threatened him and failed to protect him from potential physical violence.[4]

**a. Threats/Verbal Harassment**

Verbal harassment, absent physical injury, is not a constitutional violation cognizable under Section 1983. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *Rosales v. Kikendall*, 677 F.Supp.2d 643, 648 (W.D.N.Y. 2010) ("In this Circuit, allegations of verbal

---

[4] To the extent that the complaint could be read to include an excessive force claim against Ortiz related to "tight" restraints, that claim is dismissed. "While handcuffs must be reasonably tight to be effective, overly tight handcuffing may constitute excessive force." *Lynch ex rel. Lynch v. City of Mt. Vernon*, 567 F.Supp.2d 459, 468 (S.D.N.Y. 2008). Regarding any other action that may have been taken by Ortiz, however, the pleading is devoid of sufficient information to allow the Court to conduct any meaningful analysis. While plaintiff claims Ortiz was "aggressive," the complaint lacks any allegations related to the manner in which plaintiff was restrained or how long plaintiff was handcuffed.

harassment or threats are generally an insufficient basis for an inmate's § 1983 claim."); *see also Gill v. Hoadley*, 261 F.Supp.2d 113, 129 (N.D.N.Y. 2003) ("42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse.") (citation omitted); *Ruffino v. Murphy*, No. 09-CV-1287, 2010 WL 1444562 at *4 (D. Conn. Apr. 12, 2010) ("[D]istrict courts within the Second Circuit have held that allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under section 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner.").

Here, plaintiff does not allege that he suffered any injury as a result of the alleged harassment or threats by any named defendant. Thus, as presently plead, the claims do not rise to the level of a constitutional violation. *See Williams v. United States*, No. 07-CV-3018, 2010 WL 963474, at *16 (S.D.N.Y. Feb. 25, 2010) (concluding that allegation that corrections official threatened to "teach [plaintiff] a lesson," which was "not followed by any [alleged] physical acts," was "insufficient to state a constitutional violation"), *report and recommendation adopted by* 2010 WL 963465 (S.D.N.Y. Mar. 16, 2010).

**b. Failure-to-Protect**

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Blyden v. Mancusi,* 186 F.3d 252, 262-63 (2d Cir. 1999); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

Under the Eighth Amendment, prison officials are required to take reasonable measures to guarantee the safety of inmates and to protect them from known harm. *Farmer,* 511 U.S. at 832-33. In *Farmer*, the Supreme Court set out the two-pronged test that determines when a failure to protect a prison inmate rises to the level of a constitutional violation. First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 834. Second, the prison official must have shown "deliberate indifference" to the prisoner's safety. *Id*. Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837; *Hines v. Lacy,* 189 F.3d 460 (2d Cir. 1999).

Here, the allegations do not plausibly suggest that plaintiff was incarcerated under conditions posing a substantial risk of harm. Indeed, plaintiff has not plead that he was actually assaulted or by any inmate or staff member. While plaintiff feared for his safety and well-being, the complaint does not suggest that plaintiff "was specifically in danger." *See Pettus v. Morgenthau*, No. 05-CV-6598, 2007 WL 9718977, at *4 (W.D.N.Y. Jan. 12, 2007) (dismissing failure-to-protect claim where the plaintiff did not "point[] to any specific event at which he was threatened" and "his wholly conclusory allegations regarding the ill-nature of the inmates with whom he is housed provide nothing other than his speculative fears"); *see also Warren v. Marcy RMHU Corr. Facility*, No. 9:18-CV-0852 (GTS/DJS), 2019 WL 111043, at *2 (N.D.N.Y. Jan. 4, 2019) ("Without any type of injury, [a] failure to protect claim may be dismissed.") (citing, *inter alia, Cruz v. Hillman*, No. 01-CV-4169, 2002 WL 31045864, at *8 (S.D.N.Y. May 16, 2002) (granting motion to dismiss when plaintiff suffered only "much

mental anguish . . . worry and grief," noting that fear of assault was insufficient to support an Eighth Amendment claim)). "Fear of assault, by itself, does not constitute a sufficiently serious injury to state a claim for failure to protect." *Best v. City of New York*, No. 11-CV-4475, 2012 WL 5458054, at *7 (S.D.N.Y. Nov. 8, 2012).

### 4. First Amendment – Retaliation

Construing the complaint liberally, plaintiff alleges that defendants were motivated to retaliate against him because he "helped to convict" individuals with whom defendants had "a close relationship" or were "related." *See generally* Compl.

To state a claim of retaliation under the First Amendment, an inmate must allege facts plausibly suggesting "the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), o*verruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491. Retaliation claims must be "supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted).

Here, plaintiff has not pled that he engaged in protected conduct, to satisfy the first element of a retaliation claim. To wit, plaintiff vaguely alleges that he "helped convict men"

without any information related to when, who, how, or why. Without more, these allegations do not suggest that plaintiff engaged in constitutionally protected speech. Further, plaintiff has not alleged which defendant(s) acted adversely or any facts suggesting a causal connection between protected speech and adverse actions. In sum, the retaliation claims are set forth in "wholly conclusory terms," and are dismissed without prejudice for failure to state a claim.

Accordingly, after reviewing plaintiff's complaint, and affording it the utmost liberality in light of his pro se status, the Court is not able to discern either a factual or legal basis for this action. For all of the reasons set forth herein, this action is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## V. LEAVE TO AMEND

In light of his pro se status, plaintiff will be afforded the opportunity to file an amended complaint to correct these deficiencies. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). Plaintiff is advised that any amended complaint will completely replace the prior complaint in the action, and that no portion of any prior complaint shall be incorporated into the amended complaint by reference. Any amended complaint must contain a caption that clearly identifies, by name, each individual that plaintiff is suing in the present lawsuit and must bear the case number assigned to this action. The body of plaintiff's amended complaint must contain sequentially numbered paragraphs containing only one act of misconduct per paragraph. Thus, plaintiff should include separate paragraphs in his amended complaint for each alleged constitutional violation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date on which such misconduct occurred;

(iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and (v) the nexus between such misconduct and plaintiff's civil and/or constitutional rights.

Plaintiff is forewarned that, if he fails to submit an amended complaint within thirty (30) days of the filing date of this Decision and Order, the Court will, without further order, dismiss this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A for failure to state a claim upon which relief may be granted.

## VI. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's motion to seal (Dkt. No. 4) is **DENIED** and the Clerk shall unseal the Docket Report; and it is further

**ORDERED** that plaintiff's IFP Application (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of his Inmate Authorization Form, and notify the official that this action has been filed and that plaintiff is required to pay the Northern District of New York the statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's Inmate Authorization Form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a), the following defendants and all claims against them, are severed and transferred to the Southern District of New York: John Doe 7, John Doe 8, and J. One; and it is further

**ORDERED** that no ruling is made as to the sufficiency of the complaint with respect to the claims that have been severed and transferred to the Southern District, leaving that determination to the Southern District of New York; and it is further

**ORDERED** that the Clerk shall advise the Clerk of the Southern District of New York, in writing, of the entry of this Decision and Order and provide the Clerk with a certified copy of this Decision and Order and of the docket report for this action, together with all information necessary for the Clerk of the Southern District of New York to electronically access the documents filed in this action; and it is further

**ORDERED** that the fourteen (14) day waiting period provided for in Local Rule 83.6 is hereby waived; and it is further

**ORDERED** that if plaintiff wishes to proceed with this action, he must file an amended complaint as set forth above within thirty (30) days from the date of the filing of this Decision and Order; and it is further

**ORDERED** that, if plaintiff timely files an amended complaint, this matter be returned to the Court for further review; and it is further

**ORDERED** that if plaintiff fails to timely file an amended complaint as directed above, the Clerk shall enter judgment indicating that the action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and for failure to comply with this Decision and Order. In that event, the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff, together with a copy of the complaint.

**IT IS SO ORDERED.**

Dated: September 23, 2026
Albany, NY

Anne M. Nardacci
U.S. District Judge